# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**Chambers of**
### STEVEN C. MANNION
**United States Magistrate Judge**

**Martin Luther King Jr, Federal Bldg.**
**& U.S. Courthouse**
**50 Walnut Street**
**Newark, NJ 07102**
**(973) 645-3827**

October 26, 2016

### <u>LETTER ORDER/OPINION</u>

Re:   D.E. Nos. 52, 55, 56, 70, 75
      Romero v. County of Bergen, et al.
      <u>Civil Action No. 14cv6804 (SDW)(SCM) (consolidated with)</u>

      Tassillo, et al. v. County of Bergen, et al.
      <u>Civil Action No. 14cv6840</u>

Dear Counsel:

Before this Court are (1) cross-motions by Defendants County of Bergen, Brian Higgins, and William Peppard (collectively "County Defendants") and Plaintiffs James Tassillo, Alvin Nunez, and Elby Tineo (collectively the "*Tassillo* Plaintiffs"), respectively seeking orders precluding and compelling the deposition of County Executive, James Tedesco ("Mr. Tedesco");[1] and (2) this Court's *sua sponte* reconsideration of the orders denying the *Tassillo* Plaintiffs' request for a 90-day fact extension and vacating default against Defendant Peter Incardone ("Mr. Incardone").[2] Having reviewed the papers submitted in support and in opposition to each motion, hearing arguments from counsel on September 6 and 20, 2016, and the intervening appeal, the

---

[1] (ECF Docket Entry No. ("D.E.") 55, 60, 61, 66, 67).

[2] (D.E. 52, 56, 70).

Court will grant the protective order, deny reconsideration and the *Tassillo* Plaintiffs motion to compel, and finds the fact-discovery extension request to be moot.

BACKGROUND

The *Tassillo* Plaintiffs have been employed as sheriff's officers with the Bergen County Sheriff's Office since 2004.[3]  Plaintiffs allege that on October 23, 2014, at approximately 9:45 a.m. they were denied access to One Bergen County Plaza by Defendant James Giblin ("Mr. Giblin") because they were wearing campaign t-shirts that read "Tedesco for County Executive."[4] Mr. James Tedesco was opposing the incumbent County Executive Kathleen A. Donovan in the November 4, 2014 election for county executive.[5]  Mr. Giblin stated the men could not enter due to "polling" and then produced copies of the State statutes forbidding electioneering in polling places.[6]

PROCEDURAL HISTORY

Plaintiff Edward Romero ("Mr. Romero") and the *Tassillo* Plaintiffs (collectively "Plaintiffs") brought the instant actions against the County Defendants for allegedly violating their First Amendment rights.  The *Romero* and *Tassillo* actions were consolidated on December 1, 2015.[7]  The *Romero* Complaint was filed on October 30, 2014 against the County Defendants.[8]

---

[3] (D.E. 40 at ¶ 20).

[4] (*Id.* at ¶¶ 2, 21).

[5] (*Id.* at ¶ 2).

[6] (*Id.* at ¶¶ 26, 30).

[7] (D.E. 31).

[8]  (D.E. 1).

2

The County Defendants answered on December 4, 2014,[9] and the Initial Scheduling Order was entered on February 10, 2015.[10]   The pleading was subsequently amended on July 9, 2015 to include Mr. Incardone as a defendant.[11]   The *Tassillo* Complaint was filed on October 31, 2014 against the County Defendants.[12]   The County Defendants answered on December 18, 2014,[13] and the Initial Scheduling Order was entered on April 10, 2015.[14]

The Court held a scheduling conference on December 9, 2015 and extended the fact discovery end date from March 31, 2016 to June 1, 2016.[15]   On February 25, 2016, the Court held a scheduling conference in which Mr. Incardone's need to obtain counsel, non-appearance, potential default, and all parties' need to begin depositions were discussed.[16]   The Court also instructed Plaintiffs to seek default against Mr. Incardone to move the case and discovery along. Mr. Romero requested entry of default against Mr. Incardone on March 8, 2016.[17]   Default was entered on March 18, 2016.

---

[9]  (D.E. 3).

[10]  (D.E. 7).

[11] (D.E. 16).

[12] (*Tassillo et al. v. County of Bergen et al.,* No. Civ. 14-cv-6850-ES-MAH (D.N.J. Oct. 31, 2014) (hereinafter "Tassillo Docket") at D.E. 1).

[13] (*Id.* at D.E. 7).

[14] (*Id.* at D.E. 10).

[15] (D.E. 36).

[16] (*See* D.E. 38).

[17]  (D.E. 41).

On April 7, 2016, the Court held a scheduling conference where the same topics from the prior conference were discussed once again.[18]  The Court informed counsel to begin deposition discovery regardless of Mr. Incardone's non-appearance and advised that discovery would be extended thirty days if he appeared in the case.

During the next scheduling conference on May 19, 2016, counsel advised the Court that no depositions had been taken and requested a discovery extension.[19]  The Court granted the requested 90-day extension of fact discovery to September 1, 2016.[20]  The Court also instructed the parties to subpoena Mr. Incardone's deposition to expedite his appearance as he had still not appeared in the case.

At the August 24, 2016 status conference, all counsel sought another 60-day fact discovery extension,[21] and advised the Court that the law firm of Scarinci & Hollenbeck had been retained to represent Mr. Incardone.[22]  The Court noted that Mr. Incardone's deposition had not been subpoenaed as instructed in May and directed defense counsel to telephone Scarinci & Hollenbeck to ascertain the reason for the delayed appearance.  Robert Levy, Esq. of Scarinci & Hollenbeck ("Mr. Levy") then telephoned into the conference and reported confusion as to which case his firm had been retained to represent Mr. Incardone.  Mr. Levy and Joseph E. Santanasto, Esq., counsel for the County Defendants, were instructed to resolve the confusion and Mr. Levy was directed to seek to vacate default.  The *Tassillo* Plaintiffs opposed vacating default and requested a 90-day

---

[18]  (*See* D.E. 46).

[19]  (D.E. 49).

[20]  (D.E. 50 at ¶ 5).

[21]  (D.E. 51).

[22]  (*Id.*).

extension of the fact discovery end date. The Court denied the 90-day extension request as "disproportionate to the needs of the case" and alternatively approved a 30-day extension.[23]

On September 6, 2016, all parties voiced their consent to vacate Mr. Incardone's default except for the *Tassillo* Plaintiffs.[24] The Court then ordered the parties to file informal motion papers on the issue and Mr. Incardone's request to vacate default and the Tassillo Plaintiffs opposition followed.[25] On September 20, 2016, the Court heard from all counsel on the issue and vacated default against Mr. Incardone. [26] The *Tassillo* Plaintiffs appealed the Court's order before a written decision could be issued.[27]

On September 28, 2016, Mr. Incardone answered both complaints.[28] All counsel subsequently sought an extension of discovery with regard to Mr. Incardone which the Court granted.[29]

<u>DISCUSSION</u>

I.    MAGISTRATE JUDGE AUTHORITY

Magistrate judges are authorized to decide any non-dispositive motion designated by the Court.[30] This District specifies that magistrate judges may determine all non-dispositive pre-trial

---

[23] (D.E. 52).

[24] (D.E. 65, 68).

[25] (D.E. 62, 63, 64, 68).

[26] (D.E. 70).

[27] (D.E. 72).

[28] (D.E. 73, 74).

[29]  (D.E. 78, 79, 80).

[30]  28 U.S.C. § 636(b)(1)(A).

motions.[31]  That includes scheduling motions,[32] discovery motions,[33] and motions to set aside a

Clerk's entry of default[34] "permit[ing the] filing of [an] answer out of time."[35] All judges have

discretion to reconsider their own interlocutory orders prior to final judgment.[36]  Decisions by

magistrate judges must be upheld unless "clearly erroneous or contrary to law."[37]

## II.    ANALYSIS

The Court will first *sua sponte* reconsider the order denying the *Tassillo* Plainitffs' request

for a 90-day fact discovery extension and the order vacating default against Mr. Incardone.  Next,

the Court will address the pending cross-motions to preclude and compel the deposition of County

Executive Mr. Tedesco.

---

[31]  L. Civ. R. 72.1(a)(1).

[32]  Fed. R. Civ. P. 16(a).

[33]  L. Civ. R. 37.1.

[34]  Fed. R. Civ. P. 55(a). *Cf. Home Box Office, Inc. v. Tel–A–View Electronics Corp.,* Civ. No. 86–1491, 1986 WL 12768, at *1 (E.D. Pa. Nov.7, 1986) (rejecting the contention "that the clerk's entry of default is dispositive" and noting that "[a]n entry of default is not a default judgment").

[35]  Allyn Z. Lite, *N.J. Federal Practice Rules,* Comment 3 to Rule 72.1(a), 376, 384 (2012); *see Howard Johnson Int'l, Inc. v. SSR, Inc.*, 2015 U.S. Dist. LEXIS 94343, at *3 (D.N.J. July 21, 2015); *AllGood Entm't, Inc. v. Gridiron Video*, No. CIV.A. 09-2406 JLL, 2012 WL 395373, at *4 (D.N.J. Feb. 6, 2012); *Resolution Trust Co. v. Spagnoli,* 811 F. Supp. 1005, 1007 n.1 (D.N.J. 1993).

[36]  Fed. R. Civ. P. 54(b); *see Blincoe v. White*, No. 3:13-CV-846-H, 2015 WL 7569012, at *15 (W.D. Ky. Mar. 2, 2015).

[37]  28 U.S.C. § 636(b)(1)(A).

### a. The Discovery End Date

A pretrial order "controls the course of the action unless the court modifies it."[38]  Parties must confer on a proposed schedule modification prior to seeking a modification,[39] and a request to extend time must be made prior to the expiration of the period sought to be extended.[40]  Even if all parties consent to an extension "good cause" must be shown and "the judge's consent" must be obtained.[41]  This is because the Court maintains control over the schedule to expedite disposition of the action and to discourage wasteful pretrial activities[42] with the goal of securing "the just, speedy, and inexpensive determination of every action and proceeding."[43]

Here, the *Tassillo* Plaintiffs appealed the denial of their 90-day fact extension request because discovery was purportedly set to expire on September 24th and "the status of discovery in this matter [was]… unclear." [44] The docket provided all the clarity needed – the Court granted the prior request for a 90-day extension on May 19, 2016 and set the new fact end date for September 1, 2016.[45]  Accordingly, when the Court granted another 30-day extension on August 24, 2016, *in lieu* of the 90-day request at issue, the new fact discovery end date became October 1, 2016.[46]

---

[38]  Fed. R. Civ. P. 16(d).

[39]  L. Civ. R. 16.1(f).

[40]  L. Civ. R. 6.1(a)(2).

[41]  Fed. R. Civ. P. 16(b)(4); *see Washington v. Hovensa*, LLC, 652 F.3d 340, 348 (3d Cir. 2011) (noting that the magistrate judge did not abuse his discretion in denying the motion to modify schedule); *Assadourian v. Harb*, 430 F. App'x 79, 81 (3d Cir. 2011).

[42]  Fed. R. Civ. P. 16(a).

[43]  Fed. R. Civ. P. 1.

[44]  (D.E. 72-1, Pl. Br. at 5, 8).

[45]  (D.E. 50 at ¶ 5).

While the *Tassillo* Plaintiffs noted that discovery issues would be addressed informally by the Court, they failed to consider that all counsel were informed that a 30-day discovery extension would be granted once Mr. Incardone appeared in the case.  Mr. Incardone filed his answers on September 28, 2016. [47]  Instead of an appeal, the *Tassillo* Plaintiffs should have submitted a proposed Order for a 30-day extension.  Since the Court *sua sponte* extended discovery by thirty days and has since extended discovery as to Mr. Incardone another thirty days, the issue is moot.

Even if the Court considered the merits, the *Tassillo* Plaintiffs have not established good cause.  Good cause does not exist upon a showing of lack of prejudice to the non-movant.[48]  "A determination of good cause depends on the diligence of the moving party. The moving party has the burden of demonstrating that despite its diligence, it could not reasonably have met the scheduling order deadline."[49]  To establish good cause, the *Tassillo* Plaintiffs must show that they could not reasonably obtain discovery within the time allotted from the case's inception, not that they cannot reasonably do so in the time that remains.  Not a single deposition was taken in the first nineteen months of this litigation.[50] All of the discovery sought by the *Tassillo* Plaintiffs could have been completed long before this stage of the litigation. This lack of diligence negates a finding of good cause and is precisely the sort of dilatory behavior the Court aimed to discourage.

---

[46] (D.E. 52).

[47] (D.E. 73, 74).

[48] *GlobespanVirata, Inc. v. Texas Instruments, Inc.*, No. Civ. A. 03-2854 (GEB), 2005 WL 1638136, at *3 (D.N.J. July 12, 2005).

[49] *Spring Creek Holding Co. v. Keith*, No. 02-CV-376 (JLL), 2006 WL 2403958, at *3 (D.N.J. Aug. 18, 2006) (internal citations and quotation marks omitted); *see also GlobespanVirata*, 2005 WL 1638136, at *3; *Hutchins v. United Parcel Service, Inc.*, No. 01CV1462 (WJM), 2005 WL 1793695, at *3 (D.N.J. July 26, 2005).

[50] (*See* D.E. 49).

**b.  Motion to Set Aside the Clerk's Entry of Default**

The Court *sua sponte* reconsiders its order vacating the Clerk's Entry of Default against Mr. Incardone. [51]   Under Rule 55 of the Federal Rules of Civil Procedure, the clerk must enter default "[w]hen a party . . . has failed to plead or otherwise defend."[52] Entries of default are generally disfavored and courts should, in doubtful cases, set aside entries of default or default judgments in order to allow cases to be decided on their merits.[53]  Rule 55(c) authorizes the court to "set aside an entry of default for good cause."[54] This is a matter primarily left to the Court's sound discretion.[55] "There is a distinction between a default standing alone and a default judgment," and "[l]ess substantial grounds may be adequate for setting aside a default than would be required for opening a judgment."[56]  A court must consider three factors in setting aside default: (1) whether lifting default will prejudice the plaintiffs, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's culpable misconduct caused the default.[57]  The Court will address each factor in turn.

---

[51]  (D.E. 70).

[52]  Fed. R. Civ. P. 55(a).

[53]  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984).

[54]  Fed. R. Civ. P. 55(c).

[55]  *Hritz*, 732 F.2d at 1180 (citations omitted).

[56]  *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 656 (3d Cir. 1982); *see Mettle v. First Union Nat'l Bank*, 279 F. Supp. 2d 598, 601 (D.N.J. 2003).

[57]  *Mettle*, 279 F. Supp. 2d at 601 (citations omitted).

1.  <u>Absence of Prejudice</u>

There is nothing before the Court to indicate that the *Tassillo* Plaintiffs have been prejudiced in any meaningful way by having this case decided on its merits.  They argue they will be prejudiced as a result of discovery delays but as previously noted, any such harm is self-inflicted.[58]  The *Tassillo* Plaintiffs could have subpoenaed Mr. Incardone's deposition months ago but they did not.  That decision to hold off on discovery belongs to Plaintiffs' counsel, not Mr. Incardone.

The Court is also not persuaded that the *Tassillo* Plaintiffs have been materially prejudiced by the delay associated with Mr. Incardone's appearance in the case.  Plaintiffs have not identified how their ability to pursue their claims have been hindered since entry of default.[59]  There is also no alleged "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the [entry of default] to support a finding of prejudice."[60]  Some prejudice is inherent in any delay but "delay alone is not a sufficient basis for establishing prejudice."[61] Moreover, the Court ordered a reconciliation of discovery on September 6, 2016, the *Tassillo* Plaintiffs served Mr. Incardone with discovery requests, and the Court extended fact discovery as to Mr. Incardone by sixty days.  The Court will further attempt to mitigate any associated prejudice by: ordering the immediate and full compliance with all outstanding discovery requests, informing counsel that the

---

[58]  (D.E. 68).

[59]  *See Reliant Tooling*, 691 F.2d at 657.

[60]  *Id.* (citations omitted).

[61]  *See Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (citing *Reliant Tooling*, 691 F.2d at 656-57) (asserting that "[d]elay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening a default judgment entered at an early stage of the proceeding").

Court may preclude evidence at trial which would have been responsive to that discovery if not timely produced, and/or awarding sanctions in the form of attorneys' fees and costs if appropriate. The Court will also allow all parties to prepare their respective cases for motion practice and trial in accordance with the Court's rules.

2. Meritorious Defense

The docket contains sufficient evidence to establish that Mr. Incardone has a meritorious defense to Plaintiffs' claims. He has asserted that the Amended Complaint "fails to state a claim," that he did not deprive "plaintiffs of any right . . .secured to them by the Constitution," that there was probable cause to deny plaintiffs entrance to One Bergen County Plaza, and that he is "entitled to qualified immunity."[62]

Plaintiffs obtained a preliminary injunction in the *Tassillo* case but have not cited any authority compelling the conclusion that a preliminary injunction is dispositive on the issue of a meritorious defense. [63]  Whether a defense is meritorious is not measured "by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."[64] Here, the essential facts are largely undisputed. Plaintiffs intended to enter One Bergen County Plaza to engage in political speech at a ceremony for County employees. They were either discouraged or denied entrance on electioneering grounds when the building was open for voter registration and the distribution, completion, and casting of absentee ballots. At this stage, the Court is only concerned with whether qualified immunity would

---

[62] (D.E. 74 ¶¶ 3, 5, 9-12 20, 25).

[63] (*Tassillo* Docket at D.E. 5, 71).

[64] *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)).

constitute a complete defense if proven at trial.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[65]  Qualified immunity is a "meritorious defense" against Plaintiffs' claims in this case.[66]

### 3.  Mr. Incardone's Conduct

Lastly, the Court considers whether Mr. Incardone's failure to timely answer the *Romero* Amended Complaint was attributed to his own culpable conduct.  On March 8, 2016, Mr. Romero requested an entry of default against Mr. Incardone and the clerk properly entered default.[67] We have since learned that after Mr. Incardone was served with the *Romero* Amended Complaint on December 12, 2015,[68] he requested representation from Bergen County whose counsel confirmed on January 13, 2016 that a defense would be provided[69] Despite additional correspondence from Mr. Incardone, the County did not request representation on his behalf from Scarinci & Hollenbeck until June 20, 2016.[70]  The County then provided a caption for the wrong case.[71]  The confusion was only discovered after the Court intervened on August 24, 2016 whereupon Mr. Incardone immediately sought to vacate default.

---

[65]  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations omitted).

[66]  *See Watkins v. Donnelly*, 551 F. App'x 953, 958 (10th Cir. 2014) (no abuse of discretion where default was vacated because qualified immunity is a meritorious defense under Rule 55(c)); *see also Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006).

[67]  (D.E. 41).

[68]  (D.E. 76-2, Affidavit of Peter Incardone ("Incardone Aff.") ¶ 2).

[69]  (*Id.* at ¶¶ 3-4).

[70]  (*Id.* at ¶¶ 5-8, 63 at 2).

[71]  (D.E. 76-2, Incardone Aff. ¶ 10).

The Third Circuit Court of Appeals has stated,

> Between the extremes of repeated contumacious conduct and innocent procedural error are the manifold instances of neglect and inadvertence that require trial courts to weigh the equities of the situation and the need for the efficacious resolution of controversies. The exercise of such judgment does not lend itself to a rigid formula or to a per se rule.[72]

Here, only inadvertence by counsel is indicated and vacating default will facilitate the completion of discovery and resolution of this case on the merits.  For these reasons, the Court finds that the clerk's entry of default against Mr. Incardone was properly set aside and therefore reconsideration is denied.

### c.  Plaintiffs' Motion to Compel and Defendants' Motion for a Protective Order

The *Tassillo* Plaintiffs seek to compel the deposition of the current Bergen County Executive, Mr. Tedesco.[73]  Mr. Tedesco is not a party to the litigation and the County Defendants seek a protective order to bar his deposition.[74]  Defendants assert good cause exists to preclude the deposition because to depose a high ranking government official the *Tassillo* Plaintiffs must first demonstrate "exceptional circumstances" or "extraordinary circumstances."[75]  In deciding if "extraordinary circumstances" exist, "courts consider whether or not the party seeking the deposition has shown: (1) that the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that could not be reasonably obtained from other sources; (3) the testimony is essential to that party's case; [(4)] the deposition would not significantly interfere with the ability of the official to perform his

---

[72] *Hritz*, 732 F.2d at 1181.

[73] (D.E. 55, 61).

[74] (D.E. 60).

[75] (*Id.* at 5); *see Buono v. City of Newark,* 249 F.R.D. 469 (D.N.J. 2008).

government duties; and [(5)] that the evidence sought is not available through any alternative source or less burdensome means."[76]

It is undisputed that Mr. Tedesco is currently a high ranking government official in Bergen County. The question is whether the *Tassillo* Plaintiffs have demonstrated "extraordinary circumstances" warranting his deposition. The Court finds that they have not.  First, the Amended Complaint lacks any allegation that Mr. Tedesco played a role in the events which transpired on October 23, 2014.[77]  He was not the county executive at the time and is not alleged to have participated in any alleged retaliation.[78]

Second, and importantly, there is nothing to suggest Mr. Tedesco has first-hand knowledge that "*could not be obtained from other sources*."[79] The *Tassillo* Plaintiffs claim Mr. Tedesco has knowledge that is "unique and not available from other sources" with regard to: (1) the customs, practices, and policies regarding expressive conduct and denying people access to One Bergen County Plaza; (2) the contentiousness of the 2014 election; and (3) why Defendants will not agree to convert the preliminary injunction into a permanent one.[80]  Even if the Court assumes Mr. Tedesco has direct, first-hand knowledge of the contentiousness of the election, the *Tassillo* Plaintiffs ignore the fact that "other sources" are undoubtedly privy to the same information.  The *Tassillo* Plaintiffs have not provided any evidence to suggest the information they seek is essential to this case such that interfering with Mr. Tedesco's official duties is warranted.

---

[76] *Id.*, 249 F.R.D. at 471, n.2 (internal citations omitted).

[77] (*See generally* D.E. 16).

[78] (D.E. 60 at 2).

[79] *Buono*, 249 F.R.D. at 471, n.2 (emphasis added).

[80] (D.E. 61, 67).

Third, a less disruptive means to obtain potentially admissible evidence exists.[81]   This includes but is not limited to the depositions of Public Safety Director Ralph Rivera ("Mr. Rivera") and former Bergen County Chief of Police and Director of Public Safety Brian Higgins ("Mr. Higgins").[82] Defendants aver that Mr. Rivera and Mr. Higgins possess knowledge of the current manner of enforcing electioneering restrictions as well as historical practices and policies at One Bergen County Plaza.[83] In response, the *Tassillo* Plaintiffs claim Mr. Tedesco's deposition will encompass "a number of topics beyond th[ese] limited issue[s]."[84] They do not deny that the information they seek could be gleaned from Mr. Rivera, Mr. Higgins, or any other deponent.[85]

What's left is the *Tassillo* Plaintiffs' desire to ascertain the reasoning behind Defendants' refusal to enter into a permanent injunction. Without undertaking further analysis, the Court agrees that requiring Mr. Tedesco to be deposed to reveal Defendants' litigation strategy would be improper.[86]   Even if such questioning were permissible, a party's refusal to enter a consent order cannot establish "extraordinary circumstances" for the requested deposition.  The Court finds that good cause exists to preclude the deposition of Mr. Tedesco and Defendants' protective order is granted.[87]

---

[81] *See Buono*, 249 F.R.D. at 471, n.2.

[82] (D.E. 66 at 3-4).

[83] (*Id.*).

[84] (D.E. 67 at 4).

[85] (*See generally* D.E. 67).

[86] *See* Fed. R. Civ. P. 26(b)(3).

[87] Deposing Mr. Tedesco with regard to a policy that has not been affirmatively adopted or rejected by the County may also implicate the deliberative-process privilege. *See Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995) (deliberative process privilege

An appropriate Order follows:

**ORDER**

**IT IS** on this Wednesday, October 26, 2016,

1. **ORDERED**, that Defendants' motion to preclude the deposition of James Tedesco is **granted**; and it is further

2. **ORDERED**, that Plaintiffs' motion to compel the deposition of James Tedesco is **denied**; and it is further

3. **ORDERED**, that reconsideration of the Order vacating default is **denied;** and it is further

4. **ORDERED**, that reconsideration of the Order denying the 90-day extension of discovery is **denied** as moot**.**



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

10/26/2016 5:23:41 PM

Original: Clerk of the Court
Hon. Susan D. Wigenton, U.S.D.J.
cc: All parties
    File

---

requires a two-step review in the district court); *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 773 (D.C. Cir.1978). Because the parties have not briefed this issue the Court need not address it at this time.